Our next case is Realtime Tracker v. RELX, doing business as LexisNexis, 2023-17-56. Mr. Goethals, we'll be ready when you are. Good morning, Your Honors. May it please the Court. My name is Robert Goethals, and I represent Appellant Realtime Tracker, Inc. In this patent infringement action, the District Court erred in granting a Rule 12b-6, a motion to dismiss applicants' first amended complaint under Section 101. We're here on appeal because the District Court made several clear errors. Counsel, this is a pretty strange claim. I'm looking at Claim 29, a method comprising a computer program. Are computer programs eligible for patent? Well, in this instance, yes, Your Honor. So if you look through the rest of the claim, you'll see that the computer, the method is using a computer implementing a specific structured implementation, and the implementation includes what we refer to as a front-end interactive timekeeper entry box, which has specific functionality. Among other things, it has an entry for the personal code, and it also has an entry for the client identifier. Don't the claims essentially recite the practice of keeping track of billable hours with a generic computer? It uses standard or conventional computer components, but the structured architecture or implementation that's described in the claims is the inventive concept. What do you think is the technological innovation here? I mean, it sounds like an idea. You're going to detect that a phone call has been received, and then you're going to automatically start a second client identifier timer to start, so the lawyer, I guess, doesn't forget to change their time tracker for the entry they're on, right? I mean, what is the technological hurdle or technological improvement that was overcome? Did it have something to do with the phone talking to the computer? I don't see it in the claim. It's more like at a high level directed to the idea of accomplishing this. I can look backwards, but the benefits that result from the technology is increased accuracy, integrity of the time entry, as well as what we refer to in the papers as authenticity, which is the verification. So the nature of the invention is that you are contemporaneously tracking the time for a specific task by user, by client, and then it's recorded, so you contemporaneously track it and then record it, and that creates a verification that isn't available in manual time entry or the prior audit computer-based time entry systems. But can you do that same sort of tracking using a pen, paper, and a stopwatch? No. The point I just made, Your Honor, is that in doing it in this way, where you're contemporaneously tracking and recording, you've created a verified record that can later substantiate the billable time that you submit to your client, for example. That doesn't exist in manual. You can manually write it on a piece of paper. It may ultimately later be entered into a computer system and generated as a bill, but you don't have the verification that exists in this instance. What is the verification in your claim? The verification has to do with the fact it most directly relates to the- Like looking at Claim 29, what language should I refer to? I would refer to, well, it's the whole claim as a whole, but specifically it relates to the where-in clause. Where-in said individual time entry box contemporaneously tracks time associated with some personal code and client identifier of said telephone call to track time for individual by client on a telephone call by telephone call basis using the computer. So the key is using the computer? Using the computer is one of the means for using this- Why isn't this an Alice situation? You know, Alice where the Supreme Court says, if it's an abstract idea, we're not going to determine that it's patent eligible just because you're doing it on a computer. This is distinguished from Alice in the sense that I just mentioned. There's specific structured implementation- There's always advantages of doing things on a computer, right? I mean, there's efficiency. The Supreme Court has said it doesn't matter if it's more efficient. I agree. This is not an efficiency issue. In fact, that's one of the things the judge in the district court erred on. He ignored the benefits of the invention and instead characterized it as simply being able to speed up a time billing entry using a computer. We disagree with that. So I'm having a hard time seeing it in your claim also. So what is it that's in your claim? Is that it verifies? Yeah, it's the nature of the invention- Why is it verifying? Because it's on a computer? Because it's on a computer and you're contemporaneously tracking and creating. But if I was contemporaneously tracking and maintaining in the old-fashioned way with pen and paper, how is that not any different? The only difference seems to be that one does it on the computer and one does it by paper. Because in our invention, the contemporary creation and tracking occurs in connection with the detection of the initiation of the task. And you don't think that the person could do that? That an attorney could- No, Your Honor. So in this instance, for example, one of them is editing a Word document. So that's separately verifiable. You've connected that task with the creation of this particular time entry. So you're contemporaneously creating a time entry at the same time that you're also in a Word document, for example. Did you discuss this verifiable concept anywhere in the patent? And if so, where did you use that one? Yeah, so the problem is identified if you turn to Appendix 89, Column 1. I'm sorry. Let me go to a different version of the patent. Appendix 293, Column 1. And it starts at Line 35 and it continues through Line 41. But it says, moreover, in an increasingly cost-conscious environment, clients have justifiably mandated strict guidelines and specific support for all time billed down to the minute. This has increased the burden on professionals, such as attorneys, to keep a running track record of every hour, every minute of their billable time, and to provide adequate justification for such billable time on a daily basis. So the justification is that you have verification by virtue of this invention. You're contemporaneously creating. At the same time, you're performing the task. I still have a hard time seeing how that concept is encapsulated in Claim 29, because it doesn't say anything about keeping track of exactly what a person's working on or anything like that. It does in the sense that one of the limitations is detecting the initiation of the task. Okay. So you have the task being performed on one hand, for example, in a Word document, which is independently verifiable. And then on the second hand, you have contemporaneously creating a time entry and recording it on the system. So you have these two operating in tandem, and that helps provide for what we refer to as authenticity or the verifiable nature of the invention. I have a separate question, which is, is there a reason why you didn't include any representative claims at the beginning of your brief? Under our court's rules, when you have a patent case, and especially one where, boy, the patent language of the claim matters an awful lot, we require that the claim be included in the blue brief at the front of the brief. I apologize, Your Honor. I didn't appreciate that it was lacking in this instance. But, you know. So if I may, I would like to address the threshold issue here, is that the district court erred in ignoring and not taking into account our factual allegations in the complaint. So before we even get into the Alice issue, the question is, is that the district court erred in the first instance. He dismissed our, the district court dismissed or disregarded our factual allegations, and then just jumped right into an Alice analysis. And, you know, we believe that's clear error. He should have accepted our factual allegations as true, and then we've identified technological improvements, benefits resulting from those improvements, and that should have resulted in dismissal of the motion under 12B6 on 101 at the outset. So- Do you have a part of the district court's decision that you want to point us to where you think there was this specific error made or represented? I'll first point you to what might explain the error. But the, I mean, the opinion doesn't address our factual allegations. All it does is it characterizes them as locutions, arguments, and gloss. So on the surface, you know, he didn't attribute any significance to our factual allegations. And then secondly- Do you want to identify, I know you've shown this in your brief, but is there any particular allegation that you think is strongest that should have been considered that's in your complaint? Yes, Your Honor. In the first instance, we characterized the invention as a specific structured implementation, having a front-end timekeeper entry box with the specific functionality that I mentioned before. Why is that a factual allegation as opposed to a legal issue, understanding the scope of the claim and claim construction? Well, we believe it is factual based on the intrinsic evidence of the patent. The claim language- But looking at the claim language, the intrinsic evidence, the claim language specification, and even the prosecution history where relevant is a legal question under Supreme Court precedent. But it's contingent on factual findings, factual underpinnings. Counsel, you're well into your bubble time. I assume you're going to save it. Actually, I just want to complete the thought that I had earlier. What might explain this issue or this error by the district court is if you look at- I don't know if I can point you exactly to it, but in the district court, he characterizes a legal standard for 101 as being purely an issue of law. That's quote, unquote, that's what he identified. And if you look to see, he cited another district court case from the Southern District of New York. If you go to that case, it's Loom and View Tech versus FindtheBest.com. You'll find that there's no citation or authority provided for that legal standard because there is none. There's no district court citation. There's no federal circuit authority for that position. So the district court launched into this whole analysis on a 12B6 with the understanding that it's purely an issue of law. So that explains why he disregarded entirely our factual allegations. We will save you a minute, last period. Mr. Carrington. Thank you, Your Honor. May it please the court, I'm Oleg Carrington. I represent Appellee Relic Sync. The patent issue here is a quintessential do it on a computer patent.  Quintessential, yes. It acknowledges in the very few first paragraphs of the specification that the problem here is that the traditional process of keeping track of billable time, doing it using a pen and paper, is cumbersome. It's not efficient because people forget to enter some of their time. Time gets lost. It's not good for business, not good for clients. And the solution it proposes is, all right, let's do it on the computer because that's more efficient. It encourages people to enter the time because you get an automatic time entry window that pops up, and you get to put in your employee ID, your client code, and there's a timer that's very handy because it keeps track of your time. You don't have to do it on, you know, using a stopwatch. How do you respond to the argument being made that the reason why this is inventive is because it provides some sort of validation to the attorney's entries? Judge Stoll, I'm not sure that argument was really made in the opening brief. I'm not sure it was made below. I'm not sure it's really made in the specification of the patent. And ultimately, you know, it's not clear to me why that is something that is unique to this invention as opposed to something that's inherent in using a computer to do what previously was a manual process. So, for example, in the Accenture case, which was decided even before Alice, this court examined a method that involved essentially creating reminders for tasks for an insurance organization. You know, here's a task. Here's the person responsible for it. You know, when the due date comes, here's a reminder. You know, in that case, the court found that, you know, using a computer to accomplish what was previously a manual process really didn't take the patent from the realm of abstract ideas into something that is not abstract. Do you agree that at least the claims here don't claim this sort of validation type concept? It's not really described anywhere in the claims. I'm not even sure if it's really described in the specification. The claims here are exceedingly simple. There's really just three steps, detecting a task. Then there's a time entry window that is generated, so you can enter your employee ID and the client ID. And then the software records the time that you're spending on the task. You know, those tasks are essentially inherent in any method of keeping track of billable time. If I'm doing it using a pen and paper, well, yes, I'm registering that I'm starting a new task for a client. Then if I'm, you know, the specification acknowledges that often the way people kept track of their time manually was using a preformatted paper sheet, like a time entry sheet, which would obviously have, you know, a field for entering your employee code, a field for entering the client code. You know, that step is essentially baked into any process, computerized or manual, of keeping track of billable time. Because the whole point of keeping track of billable time is to do it on, you know, account for specific employees doing specific tasks for specific clients. And finally, you know, the last step is that the software tracks time that the professional is spending on the task. Again, that is a concept that is baked into the definition of keeping track of a professional's billable time. And so... So if we were to agree that this alleged invention or the claims here are directed to an abstract idea, what is your response to their argument that there was a saving inventive concept? There's not... I'm not really sure what they articulate to be the inventive concept. Again, you know, Representative Claim 29 includes these three steps, and everything is done using a generic computer that has a generic computer program residing on it. There's no even allegation that the steps that are recited in the claim detecting a task, entering an employee ID and a client ID, keeping track of the time spent on the task, were not well understood, routine, or conventional. As I indicated, those steps are essentially baked into any kind of process, manual or computerized, of keeping track of billable time. What is your response to the argument being made that the district court ignored important material, factual allegations made in the complaint? There are no well-planned factual allegations that the district court was required to accept. It addressed the allegations, it just didn't find them to be the type of allegations that the court has to accept as true, because they were both conclusory and contradicted by the intrinsic record. So, for example... They're not factual, maybe? They're not factual. So, for example, the argument on appeal is that at step one, the claims are directed to an improvement in computer functionality, just so to, I think, the point that you were making earlier. That's not really a factual question. Step one is essentially a legal inquiry where you're looking at, what is the focus of the invention as described in the specification and in the claims? And here, if you look at the claims and the specification, but really you're focused on the claims, everything is done using a completely generic computer. There's no indication that the way in which this computer accomplishes the steps of detecting a task, of generating a time entry window, of keeping track of the time, is any better, more efficient than existing computer technology would have been capable of accomplishing. So, that's a purely conclusory legal allegation. And, in fact, the specification contradicts it because it explains that, really, the whole point here is just we're doing the same process that was previously done manually, keeping track of available time, and we're trying to save people time. We're trying to make it more efficient by simply implementing it on a computer. There's some discussion by counsel for appellant of the specific structured user interface that's discussed in the claims. The claims really don't describe any such interface. I mean, the interface that's described in the claims is essentially a time entry window that has two fields, one for entry of a client code, one for entry of an employee ID. That's all there is to that interface. It's really no different from, for example, a pre-formatted paper timesheet that people might have been using or were using long before this patent. So, there's nothing unconventional about that user interface. There's also discussion in the brief by appellant that the back-end system that accomplishes these tasks was an improvement in computer functionality. Again, to reiterate, everything, according to the patent and according to the claims, is done using a generic hardware, a generic computer. There's nothing unconventional about that either. So, ultimately, the scope of preemption here, which is, of course, the underlying concern behind the Supreme Court's section 101 jurisprudence, is exceptionally broad because the claims here essentially preempt any kind of computerized method of keeping track of billable time. Is that really true? I mean, to be honest with you, it does have some limitations about you get a phone call, then you start a second time entry. I mean, it's not going to cover any system for entering time on your computer. Perhaps that might have been an overstatement, but it preempts a whole lot. So, for example, even the idea of tracking tasks, multiple tasks for multiple clients, that's sort of inherent, again, in any method of billable timekeeping, even manual methods. If I'm keeping track of my time manually using pen and paper, well, I'm going to keep track of whatever time I'm spending on that specific task that I'm performing at the time. Then if I get a call that's maybe for a different client, I'm going to start a separate entry and keep track for that client. And then maybe when I'm done with that task, I'm going to come back to the first task I was doing and resume keeping time for that task. There's nothing in that process that can be done manually with pen and paper and a stopwatch. So even that aspect of the invention, which is not even present in any of the independent claims, I think it's only some of the dependent claims talk about the program being capable of keeping track for multiple tasks, multiple clients at the same time. There's nothing inventive or unconventional even about that aspect. What's your response to the argument that was least raised in the briefs that the court shouldn't have just focused on Claim 29 as representative? Appellant did not really dispute that Claim 29 is representative below. I mean, in our opening brief, our opening motion to dismiss, we had a whole section that was entitled Claim 1 is representative. We made it very clear that that was the argument that we were making. Claim 1 or Claim 29? I thought we were just talking about Claim 29. I'm sorry. The argument below was that Claim 29 is representative. Appellant did not address, dispute that point in opposition to our motion to dismiss. And the court pointed out in its decision that the plaintiff appellant did not really dispute the representativeness of Claim 29. But at the same time, the district court did specifically address, out of abundance of caution, the other claims. And it simply noted that the limitations that are present in those other claims, both independent and dependent, really fall into a couple of different categories. Some of the claims talk about additional fields being included in the time entry window, like the date or the document or task description. There are some claims that talk about additional features, maybe not specifically fields, but features that are included in the time entry box, like a timer that has a pause and resume buttons. And then there are some additional processing steps that are described in some of the dependent claims. Like, for example, the information that's recorded in the time entry window is then stored by the computer system later for inclusion into a comprehensive summary of that person's available time. So Claim 29 is representative. The district court didn't make any error in using it in that matter. And in any event, I don't even think that Appellant really preserved their argument for appeal. Anything further, counsel? No. If the panel doesn't have any other questions, then I'll be happy to include my argument. Thank you. Mr. Goethals has about a minute left. We'll give you two minutes for rebuttal, if you need it. Yes, Your Honor. I'd like to get back to one of the issues that we were discussing as to the factual allegations contained in the complaint that were not addressed and ignored by the district court. You know, the threshold error before he engaged in any of his other 101 errors as a matter of law. So if you go to Appendix 143, essentially through Appendix 147, but starting with Paragraph 13 on Appendix 143. So this is the context for the technological improvements. They derive from the technical distinctions that were identified by the examiner during prosecution, particularly in light of two references, Goitman and Collado. So part of our factual allegations, we identified these technical distinctions as the basis for the technological improvements of the invention. And the district court just flat out ignored these, didn't take them into consideration at any stage. The threshold issue as to whether there were factual allegations that he must accept as true. And then secondly, when he got into his 101 analysis, where he went through and, again, didn't attribute any weight to the factual allegations in our complaint. And with regard to the invention, one thing to keep in mind is the simultaneous nature that was mentioned by my colleague during his response. Is that there are claims directed toward the simultaneous operation, and that brings even more emphasis to the benefits that are attributable to the invention. The accuracy, the integrity, as well as the verifiable nature of the invention. Thank you, counsel. Your time has expired, and we have your case. Thanks to both counsel. Case is submitted.